# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ALYSSA ENEGREN, et al.,

    **Plaintiffs,**

v.

KC LODGE VENTURES LLC, et al.,

    **Defendants.**

Case No. 17-2285-DDC-GEB

## MEMORANDUM AND ORDER

Plaintiffs, on behalf of themselves and others similarly situated, filed this lawsuit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201– 219, alleging unlawful pay practices against defendants KC Lodge Ventures LLC, et al.  Doc. 29.  This matter comes before the court on plaintiffs' Unopposed Motion to Grant Final Certification and Approve Collective Action Settlement (Doc. 73) and plaintiffs' Unopposed Motion for Approval of Award of Attorneys' Fees in Conjunction with Settlement (Doc. 74).

### I.     Background

Defendants own and operate Twin Peaks franchise restaurants in Kansas and Missouri.  Plaintiff Alyssa Nida[1] is a former Twin Peaks employee.  She represents a collective class of current and former employees ("Twin Peaks plaintiffs") who have filed a putative collective action claim for alleged FLSA violations.  They assert that defendants (1) failed to pay Twin Peaks plaintiffs for all hours worked; (2) failed to compensate Twin Peaks plaintiffs for the cost of their uniforms and other image and costume standards; and (3) failed to ensure servers made minimum wage after mandatory tip sharing.

---

[1]     Ms. Nida's last name was Enegren when she filed the Complaint.  She since has married and changed her last name to Nida.  Doc. 72.

Plaintiff, individually and on behalf of others similarly situated, filed a Complaint against defendants on May 17, 2017. The parties participated in an unsuccessful mediation session on January 22, 2018. Plaintiff then filed an amended complaint, and defendants filed an answer and asserted various affirmative defenses. The parties proceeded with discovery from March to July 2018. On August 31, 2018, the parties filed a joint motion stipulating to conditional collective action certification and asked the court to approve the parties' eventual stipulation for conditional certification.

On September 10, 2018, the court conditionally certified plaintiffs' claims as a collective action under 29 U.S.C. § 216(b), and authorized notice to all current and former servers, bartenders, and hostesses employed by any defendant at any time since June 6, 2015. Plaintiffs mailed the court-approved notice to putative class members. The notice advised them of their right to join the case and advised those who elected to join of the terms and conditions of class membership:

> If you choose to join this lawsuit, . . . you will be bound by any ruling, settlement, or judgment, whether favorable or unfavorable, on the claims asserted. By joining this lawsuit, you designate the Named Plaintiff as your representative, and to the fullest extent possible, to make decisions on your behalf concerning the case, the method and manner of conducting the case, the entering of an agreement with Plaintiff's counsel regarding payment of attorneys' fees and court costs, the approval of settlements, and all other matters pertaining to this lawsuit.

Doc. 54-1 at 3 (¶ 9). The Notice also advised:

> If you choose not to join this lawsuit, you will not be affected by any ruling, judgment, or settlement rendered on the claims asserted in this case, whether favorable or unfavorable.

*Id.* (¶ 10).

And, plaintiffs' counsel required putative opt-in plaintiffs to file a consent form. The court-approved consent form provides:

> I hereby consent to be a party plaintiff seeking unpaid wages against [Defendants] . . . . I designate the Named Plaintiff to make all decisions on my behalf concerning the method and manner of conducting the case including settlement, the entering of an agreement with Plaintiffs' counsel regarding payment of attorneys' fees and court costs, and all other matters pertaining to this lawsuit. For purposes of this lawsuit, I choose to be represented by Foulston Siefkin LLP and other attorneys with whom they may associate.

*Id.* at 5.

Following conditional certification, 102 Twin Peaks plaintiffs filed consent forms and joined the case as opt-in plaintiffs. Through discovery and a separate agreement on the conditional certification process, the parties exchanged documents and electronically stored information about defendants' uniform requirements and payroll, timekeeping, and personnel records for every plaintiff.

On February 21, 2019, the parties participated in a mediation session with mediator Dennis Gillen. After a full day of mediation, the parties reached a settlement agreement. The parties later executed a Settlement Agreement and Release of Claims ("the Settlement Agreement") memorializing the terms of their settlement. Doc. 73-1. All opt-in plaintiffs have received notice of the terms of the settlement, and none have objected. The parties have submitted the Settlement Agreement to the court with plaintiffs' unopposed motion seeking approval of the settlement. *Id.*

Under the terms of the Settlement Agreement, defendant has agreed to pay a total of $300,000.00 (the "Settlement Fund"), which will be allocated as follows:

1. No more than $15,000 to representative plaintiff as a service award;

2. No more than $133,000 in attorneys' fees; and

3. The remainder—$152,000— to the 102 collective action members distributed on a *pro rata* basis.

In exchange, the Twin Peaks plaintiffs have agreed to release any claims under state and federal wage and hour laws, and any claims under state wage payment laws from the same facts as those asserted in this case. Also, named plaintiff has signed a general release of all claims against defendants.

The Settlement Agreement provides for a *pro rata* distribution of the Settlement Fund to each collective action member who consented to join this lawsuit. Plaintiffs' counsel developed a formula accounting for each plaintiff's total period of employment, number of shifts worked, and average hourly wage. Plaintiffs who had worked for a shorter period of time will receive a smaller amount for uniform reimbursement, and those who worked for a longer period will receive more. The portion of the settlement for unpaid meeting time is allocated based on the number of shifts each plaintiff had worked.

Defendants will pay the Settlement Fund in four installments. Defendants will pay one-half of the total amount after the court approves the settlement. They will pay the remaining one-half in three subsequent equal installments. All amounts will be allocated on a *pro rata* basis across the overall payment timeline (meaning that the named plaintiff, opt-in plaintiffs, and plaintiffs' counsel will receive their portions of the Settlement Fund at the same time).

## II.    Legal Standard

### A.  FLSA Collective Action Settlement

The parties to an FLSA action must present a settlement of those claims to the court for review and a determination that the settlement is fair and reasonable. *Barbosa v. Nat'l Beef Packing Co., LLC.*, No. 12-2311-KHV, 2015 WL 4920292, at *3 (D. Kan. Aug. 18, 2015) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). "To approve an FLSA settlement, the Court must find that the litigation involves a bona fide dispute and that

the proposed settlement is fair and equitable to all parties concerned." *Id.* (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1353).

The court may enter a stipulated judgment in an FLSA action "only after scrutinizing the settlement for fairness." *Id.* (citing *Peterson v. Mortg. Sources, Corp.*, No. 08-2660-KHV, 2011 WL 3793963, at *4 (D. Kan. Aug. 25, 2011)); *see also Tommey v. Comput. Scis. Corp.*, No. 11-CV-02214-EFM, 2015 WL 1623025, at *1 (D. Kan. Apr. 13, 2015) (citation omitted). "If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation." *Gambrell v. Weber Carpet, Inc.*, No. 10-2131-KHV, 2012 WL 5306273, at *2 (D. Kan. Oct. 29, 2012) (citing *Lynn's Food Stores*, 679 F.2d at 1354).

Also, when parties settle FLSA claims before the court has made a final certification ruling, the court must make a final class certification finding before it can approve an FLSA collective action settlement. *Barbosa*, 2015 WL 4920292, at *3 (citing *McCaffrey v. Mortg. Sources, Corp.*, No. 08-2660-KHV, 2011 WL 32436, at *2 (D. Kan. Jan. 5, 2011)).

### B. Attorney's Fees Under the FLSA

The FLSA requires the parties to include in the settlement agreement an award of reasonable attorney's fees and the costs of the action. 29 U.S.C. § 216(b); *see also McCaffrey*, 2011 WL 32436, at *2 (citing *Lee v. The Timberland Co.*, No. C 07-2367-JF, 2008 WL 2492295, at *2 (N.D. Cal. June 19, 2008)). The court has discretion to determine the amount and reasonableness of the fee, but a FLSA fee award is mandatory. *Barbosa*, 2015 WL 4920292, at *3 (citations omitted).

### III.    Analysis

Plaintiffs have filed an Unopposed Motion to Grant Final Certification and Approve Collective Action Settlement.  Doc. 73.  Plaintiffs also have filed an Unopposed Motion for Approval of Award of Attorneys' Fees in Conjunction with Settlement.  Doc. 74.  In their motions, plaintiffs ask the court to certify a final collective action, approve the settlement as fair and reasonable, and award the proposed attorneys' fees and costs in an amount equal to 40 percent of the settlement.  Doc. 74 at 2.  The court addresses these requests, in turn, below.

#### A.  Final Collective Action Certification

Because the parties have settled their FLSA claims before the court made a final certification ruling, the court must enter a final class certification finding before it can approve the settlement.  *See Barbosa*, 2015 WL 4920292, at *3 (citing *McCaffrey*, 2011 WL 32436, at *2).  The FLSA provides that an employee may bring a collective action on behalf of other employees who are "similarly situated."  29 U.S.C. § 216(b).  To determine whether plaintiffs are "similarly situated" for purposes of final collective action certification, the court considers several factors.  They include:  "(1) the disparate factual and employment settings of individual plaintiffs; (2) various defenses available to defendant[s] which appear to be individual to each plaintiff; and (3) fairness and procedural considerations."  *Gambrell*, 2012 WL 5306273, at *3 (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102–03 (10th Cir. 2001)).

Plaintiffs ask the court to certify a final collective action.  The parties agree that the plaintiffs are similarly situated and that final certification is warranted.  But the court still must examine the *Thiessen* factors before it can grant final certification.

For the first factor, plaintiffs assert that they are similarly situated because each class member worked as a server at one of defendants' franchised Twin Peaks restaurants.  They had

common job descriptions and performed common duties involving food, beverage, and merchandise sales. Defendants subjected all plaintiffs to the same personnel policies, including uniform policies. Defendants expected all plaintiffs to participate in periodic special events and "costume parties," and the costume expectations were the same for all plaintiffs. These facts demonstrate that individual plaintiffs worked in similar employment settings, and so the first factor favors final collective action certification for plaintiffs.

For the second factor, plaintiffs assert that defendants have raised no defenses against any individual plaintiff. Indeed, one of defendants' primary defenses is that the clothing at issue is of a general type that could be worn in other settings, so the clothing is not for the employers' benefit and defendants had no obligation to compensate plaintiffs for the cost of that clothing. If defendants would prevail on this argument, it would affect the claims of all plaintiffs equally. The second factor also favors final collective action certification.

Finally, the third factor—fairness and procedural considerations—favors final collective action certification. Allowing plaintiffs to pool their resources for litigation favors collective action treatment. *See Barbosa*, 2015 WL 4920292, at *5 (citing *Fulton v. TLC Lawn Care, Inc.*, No. 10-2645-KHV, 2012 WL 1788140, at *3 (D. Kan. May 17, 2012)). Also, the policy of encouraging settlement of litigation also favors final collective action certification. *Gambrell*, 2012 WL 5306273, at *4 (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1354).

After considering the *Thiessen* factors, the court concludes that all three factors favor final collective action certification. The court thus certifies a final collective action for the Twin Peaks plaintiffs.

## B. FLSA Collective Action Proposed Settlement

Plaintiffs next ask the court to approve the proposed Settlement Agreement (Doc. 73-1). As explained above, when parties settle FLSA claims, they must present the settlement to the court to review and decide whether the settlement is fair and reasonable. *Tommey*, 2015 WL 1623025, at *1; *see also Gambrell*, 2012 WL 5306273, at *2 (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1352) ("When employees file suit against their employer to recover back wages under the FLSA, the parties must present any proposed settlement to the district court for review and a determination whether the settlement is fair and reasonable."). To approve an FLSA settlement, the court must determine whether: (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties, and (3) the proposed settlement contains an award of reasonable attorney's fees. *Barbosa*, 2015 WL 4920292, at *5 (citing *McCaffrey*, 2011 WL 32436, at *2). The court addresses each consideration below.

### 1. Bona Fide Dispute

Before approving a settlement of FLSA claims, the parties must submit sufficient information for the court to find that a bona fide dispute exists. *McCaffrey*, 2011 WL 32436, at *4 (citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010)). To satisfy this obligation, the parties must provide the court with: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each parties' estimate of the number of hours worked, and the applicable wage. *Id.* In their motion, plaintiffs provide the court with this information. Doc. 73 at 2–6 & 10.

Plaintiffs assert that a bona fide dispute exists because the parties dispute whether defendants properly compensated plaintiffs. Plaintiffs allege that defendants violated the FLSA because they failed to pay plaintiffs minimum wages, after subtracting unreimbursed uniform expenses and accounting for certain unpaid working time attending meetings. Defendants deny these allegations and contend that the uniform items plaintiffs purchased were not required. Defendants also argue that FLSA doesn't require reimbursement for the uniforms because the uniforms were not primarily for the employer's benefit. Defendants also deny that plaintiffs were required to attend meetings "off the clock."

The parties participated in a mediation session on January 22, 2018, but failed to reach an agreement. Plaintiffs then filed an Amended Complaint. Defendants filed an Answer, denying that they failed to pay the putative class plaintiffs minimum wage and asserting other affirmative defenses. Doc. 31. The parties engaged in pre-mediation written discovery, and required Judge Birzer's assistance with disputes about the scope of discovery. On February 21, 2019, the parties participated in a second mediation session and reached an agreement.

Plaintiffs assert that defendants face a substantial monetary verdict, plus the attorneys' fees and costs, if plaintiffs prevail. If not, plaintiffs may recover less, or nothing at all.

The court concludes that the claims and defenses asserted by the parties frame a bona fide dispute about FLSA provisions.

### 2. Fair and Equitable

The court next considers whether the proposed settlement is fair and equitable. "To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales." *Solis v. Top Brass, Inc.*, No. 14-cv-00219-KMT, 2014 WL 4357486, at *3 (D. Colo. Sept. 3, 2014). To determine if the proposed

settlement is fair and equitable, courts regularly examine the factors that apply to proposed class action settlements under Rule 23(e). *Barbosa v. Nat'l Beef Packing Co., LLC.*, No. 12-2311-KHV, 2014 WL 5099423, at *7 (D. Kan. Oct. 10, 2014); *Tommey*, 2015 WL 1623025, at *2. Those factors include: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Barbosa*, 2014 WL 5099423, at *7; *Tommey*, 2015 WL 1623025, at *2. "If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation." *Gambrell*, 2012 WL 5306273, at *2 (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1354).

Plaintiffs assert that the proposed settlement satisfies each of these factors. The court agrees.

*First*, the court concludes that the settlement was fairly and honestly negotiated. The parties resolved the case through an arms-length mediation session with Dennis Gillen. Mr. Gillen is a capable and experienced mediator.

*Second*, it appears the case presents substantial, disputed questions of law and fact, and those issues place the ultimate outcome of the litigation in doubt. For plaintiffs' reimbursement claim, disputed issues include: (1) what clothing items defendants' uniform guidelines required; (2) how defendants' managers enforced the uniform requirements; (3) whether the clothing items were general enough so that they were not reimbursable business expenses; and (4) the sufficiency of the evidence about plaintiffs' clothing and related purchases. The parties also

dispute unpaid work time. Specifically, they dispute whether the meetings were mandatory and the amount of allegedly uncompensated meeting time. And, conflicting timekeeping records will make it difficult to resolve these questions.

*Third*, the Settlement Agreement provides value in the form of an immediate recovery to plaintiffs. That certain outcome is more desirable than uncertain future relief after protracted and expensive litigation. Defendants' restaurants are spread across Kansas and Missouri, and some plaintiffs have relocated. Defendants assert they would depose all 103 plaintiffs, and plaintiffs would have to depose managers at defendants' numerous restaurants and corporate employees. Significant discovery and the likelihood of dispositive motions from both sides means a litigated resolution is years away, and at considerable expense.

And *fourth*, the parties assert the Settlement Agreement is fair and reasonable. The named plaintiff and defendants—all of whom are represented by experienced and motivated counsel—have agreed to a settlement they evaluate as fair and reasonable. Plaintiffs' counsel notified the opt-in plaintiffs of the Settlement Agreement and gave them an opportunity to object to the settlement terms. None objected. The court views counsels' experience and plaintiffs' silence as circumstantial evidence that the settlement was fair and reasonable. The court thus finds that all four factors favor the settlement.

But while these factors may demonstrate that the settlement agreement is fair and reasonable, they do not control the outcome. *See McCaffrey*, 2011 WL 32436, at *5 (explaining that the Rule 23(e) factors "provide a general framework for the Court's determination whether an FLSA settlement is fair, but they are not determinative"). In addition to the four factors listed above, the court also must determine "that the proposed settlement is fair and equitable to all parties in light of the history and policy of the FLSA." *Gambrell*, 2012 WL 5306273, at *5. The

court thus examines several additional considerations to determine whether the Settlement Agreement is fair and equitable.  They include:  (i) whether opt-in plaintiffs received notice of the proposed settlement and an opportunity to object; (ii) how plaintiffs' counsel plans to distribute the Settlement Fund; and (iii) how much of the Settlement Fund should be allocated to the named plaintiff as a service award.

### a.  Notice of the Proposed Settlement

The FLSA does not require a fairness hearing like that required for settling class actions brought under Fed. R. Civ. P. 23.  *Tommey*, 2015 WL 1623025, at *1.  But courts routinely hold fairness hearings in FLSA actions unless the parties demonstrate that the opt-in plaintiffs had notice of the settlement and an opportunity to object.  *Stubrud v. Daland Corp.*, No. 14-2252-JWL, 2015 WL 5093250, at *1 (D. Kan. Aug. 28, 2015) (citing *Tommey*, 2015 WL 1623025, at *1; *Goldsby v. Renosol Seating, LLC*, No. 2:08-0148-KD-N, 2013 WL 6535253, at *10 (S.D. Ala. Dec. 13, 2013)).  As explained below, plaintiffs here have submitted sufficient information to establish that all 102 opt-in plaintiffs received notice of the settlement and the opportunity to object.  Thus, in these circumstances, the court has decided that it need not conduct a fairness hearing.

On March 5, 2019, plaintiffs' counsel notified all opt-in plaintiffs by email that the parties had reached a settlement and to expect a letter with information about the settlement's terms.[2]  On March 29, 2019,  plaintiffs' counsel provided each plaintiff a letter explaining: (1) the material terms of the settlement and the overall settlement amount; (2) the settlement's division; (3) the factors used to allocate the settlement amount among plaintiffs; (4) the

---

[2]      Plaintiffs' counsel notes that they had previously corresponded with the opt-in plaintiffs via e-mail, and thus had a valid e-mail address for each plaintiff.  None of the e-mails were returned as undeliverable.  Doc. 7 at 5 n.3.

settlement portion the recipient plaintiff would receive; (5) the income tax reporting for the settlement; (6) the timing of the settlement payments; (7) the amount of the proposed service award allocated to the named plaintiff; (8) the proposed amount of attorneys' fees and costs allocated to plaintiffs' counsel; and (9) the limited release binding each opt-in plaintiff. The letter provided a dedicated phone number and e-mail address for any objections and provided a three-week window and process for raising any objections. Plaintiffs' counsel received no objections. The court concludes that notice of the proposed settlement to the opt-in plaintiffs was fair and reasonable.

### b. Distribution of Settlement Proceeds

The Settlement Agreement requires distribution of the Settlement Fund based on an allocation formula plaintiffs' counsel developed. The formula reflects each opt-in plaintiff's total period of employment, number of shifts worked, and average hourly wage. Plaintiffs' uniform expense claim is based on monthly themed events and occasional special events, so plaintiffs who worked over a shorter period of time will receive smaller reimbursement amounts, and those who worked over a longer period of time will receive more. The portion of the settlement for regular pre-shift meetings is allocated based on the number of shifts each opt-in plaintiff worked. The formula also accounts for monthly meetings, with allocation based on the number of months each opt-in plaintiff had worked. All calculations are limited to the opt-in plaintiff's period of employment within the statutory recovery period (which varies based on the date of filing for the consent form under 29 U.S.C. § 256(b)), with adjustments to reflect the court's tolling order. Based on plaintiffs' counsel's representations, the court concludes the proposed distribution of the Settlement Fund is fair and reasonable.

### c. Service Award

The court also must examine any service award payments and determine whether they are fair and reasonable. *See Tommey*, 2015 WL 1623025, at *2; *Grove v. ZW Tech, Inc.*, No. 11-2445-KHV, 2012 WL 1789100, at *7 (D. Kan. May 17, 2012). Here, plaintiffs ask the court to approve a service award in the amount of $15,000 for the representative plaintiff (Ms. Nida). Plaintiffs assert that this amount is reasonable and thus the court should approve the service award.

The amount of the requested service award ($15,000) represents five percent of the Settlement Fund. Opt-in plaintiffs will receive between $40.21 and $5,746.40, based on plaintiffs' counsel's formula accounting for total period of employment, number of shifts worked, and average hourly wage.[3] According to their own estimate, Ms. Nida spent 131 hours on the case (amounting to an award of $114.50 per hour if she receives the proposed $15,000). She provided plaintiffs' counsel with documents and information necessary for their investigation, reviewed allegations in the complaint before filing, helped formulate document and information requests, identified and contacted potential witnesses, met with counsel at least eleven times, and attended two full-day mediation sessions.

Plaintiffs assert that Ms. Nida left her job at Twin Peaks after bringing this lawsuit because her managers and co-workers were upset with her, and she did not believe she could return to work without harm to her mental health. She lost 16 weeks of income while she looked for a job with comparable income. She also missed two full days of work and several half days of work because she devoted that time to working on this case. Plaintiffs contend that future

---

[3] Ms. Nida's portion of the settlement under the distribution formula is $3,355.63. So, if she received the service award represented by counsel, she would receive $18,355 of the $300,000 settlement fund.

employers may be less likely to hire Ms. Nida if they learn of the role she played in this lawsuit. They also contend that the she shouldered the entire burden in this case as the only representative plaintiff. She also released all her personal claims against defendants as a condition of settlement.[4]

The court recognizes Ms. Nida's contributions, but a service award equal to five percent of the Settlement Fund and amounting to $114.50 per hour is out of line with awards in this district. "[O]ur court has found that $20 per hour is a reasonable incentive fee." *Foster v. Robert Brogden's Olathe Buick GMC, Inc.*, 2019 No. 17-2095-DDC-JPO WL 1002046 at *19 (D. Kan. Feb. 28, 2019); *see also In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) (reducing requested service awards to each of the four named plaintiffs from $15,000 to $5,000, even though the total settlement exceeded $25 million, because the $5,000 award adequately compensated each plaintiff for the 80 hours of time, on average, that each devoted to the lawsuit); *Barbosa*, 2015 WL 4920292, at *6 (rejecting proposed service award of $3,500 to each of the two named plaintiffs who spent 24.1 hours and 9.6 hours respectively on the case, and instead concluding that $20 per hour for the time plaintiffs spent on the case was a fair and reasonable service award); *Bruner v. Sprint/United Mgmt. Co.*, Nos. 07-2164-KHV, 08-2133-KHV, 08-2149-KHV, 2009 WL 2058762, at *11 (D. Kan. July 14, 2009) (rejecting $10,000 proposed service award to the named plaintiff in an $8.7 million settlement because plaintiff failed to provide specific details about the amount of time she invested in the suit and awarding a $5,000 service award instead).

---

[4]     In contrast to the scope of Ms. Nida's release, the putative class members signed only a limited release, *i.e.*, releasing all claims under federal and state wage and hour laws, and any claims under state wage payment laws that arise from the same facts asserted in this case.

Here, plaintiffs have provided detailed information about Ms. Nida's contributions to the case. They also provided information on lost compensation—both from when she missed work to assist with the case and when she was out of work after leaving defendants' employment—and the burden on her as the only representative plaintiff. The court takes into account her time off work to assist with this case. The court also recognizes that she has released all claims she could assert against defendants, not just federal and state wage claims.

But the court can't permit Ms. Nida to increase her service fee to compensate her for an unasserted retaliation claim. The FLSA makes it unlawful to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted . . . any proceeding under or related this this chapter . . . ." 29 U.S.C. 215(a)(3). *See*, *e.g.*, *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199 (10th Cir. 2004). The court has no way to know whether defendants retaliated against her for asserting an FLSA claim. But if they did, as Ms. Nida claims, she had every right to assert a claim alleging retaliation and ask to recover any income lost because of retaliation. *See Pacheco*, 365 F.3d at 1206 (explaining the burden-shifting framework for FLSA retaliation claims). But the court can't increase her service fee based on the allegation that Ms. Nida lost income because of unproven retaliation. Doing so, in effect, would let her recover for that alleged loss from her fellow class members. This theory isn't a proper basis for a service fee award.

Based on guidance our court has given in similar cases, the court determines that plaintiffs' request for a $15,000 service award for the representative plaintiff would grant her a disproportionate windfall. The court thus reduces the representative plaintiff's service award to $5,000. The court finds that this amount is a fair and reasonable amount for her contributions.

### C.  Attorneys' Fees

Plaintiffs' counsel seeks an award of $120,000 for attorneys' fees.  Doc. 74.  The attorneys' fees amount represents 40 percent of the Settlement Fund.  A percentage fee from a common fund award "must be reasonable and . . . the district court must articulate specific reasons for fee awards demonstrating the reasonableness of the percentage and thus the reasonableness of the fee award."  *Barbosa*, 2015 WL 4920292, at *7 (citing *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988)).

To determine the fee award's reasonableness, "[t]he Tenth Circuit applies a hybrid approach, which combines the percentage fee method with the specific factors traditionally used to calculate the lodestar."  *Id.* (first citing *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995); then citing *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994)).  This method calls on the court to calculate a lodestar amount, "which represents the number of hours reasonably expended multiplied by a reasonable hourly rate."  *Solis v. Top Brass, Inc.*, No. 14-cv-00219-KMT, 2014 WL 4357486, at *4 (D. Colo. Sept. 3, 2014) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (further citation omitted)); *see also Hobbs v. Tandem Envtl. Sols., Inc.*, No. 10-1204-KHV, 2012 WL 4747166, at *3 (D. Kan. Oct. 4, 2012).  The hybrid approach also requires the court to consider the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).  Those factors are:  (1) time and labor required; (2) novelty and difficulty of the questions presented in the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys;

(10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Barbosa*, 2015 WL 4920292, at *8 (first citing *Rosenbaum*, 64 F.3d at 1445; then citing *Johnson*, 488 F.2d at 717–19).

The court analyzes these factors below.

### 1. Time and Labor Required

After litigating this case for more than two years, plaintiffs' counsel represents that they have spent about 318 attorney hours and 180 paralegal hours working on this matter. The tasks involved in this case included investigating and researching the claims, drafting and filing the Complaint, propounding discovery, addressing deficiencies in production, reviewing documents, numerous phone calls with defendants' counsel, preparing for a contested conditional certification process (although it was ultimately achieved through stipulation), coordinating the filing of consent forms from 102 opt-in plaintiffs, interviews and other communications with the opt-in plaintiffs, preparing damages calculations, preparing for and participating in two mediations, drafting the Settlement Agreement, and drafting pleadings for approval of the settlement. The court finds this litigation required significant effort by counsel that justifies the time recorded.

Plaintiffs' counsel provides an hourly rate for the timekeepers who recorded time to this matter. Partners Boyd Byers (142.5 hours) and Forrest Rhodes (129.0 hours) billed the large majority of the hours recorded to this matter. Mr. Byers leads the firm's employment law group, and has about 25 years of experience in employment law. Mr. Rhodes is a partner in the firm's employment group and has practiced for about 19 years. He specializes in FLSA matters. Two associates billed a total of 47.3 hours. Three paralegals billed the remaining time (337.8 hours).

Plaintiffs' counsel asserts the lodestar amount is $178,865.00. But counsel is requesting $120,000 based on a 40 percent contingency fee agreement. The court concludes this factor favors approval of the fee award.

### 2. Novelty and Difficulty of the Questions Presented

Plaintiffs assert that wage and hour cases, especially collective actions, involve a complex blend of statutory and regulatory requirements that require skilled and experienced counsel. But the court already considered the complexity of collective actions in its analysis of the first *Johnson* factor, *i.e.*, it considered the time and labor counsel devoted to the case. Thus, the court finds this factor is a neutral one in the analysis.

### 3. Skill Requisite to Perform the Legal Service Properly

Plaintiffs' counsel regularly handle FLSA litigation, including prosecuting and defending numerous collective actions. Plaintiffs' counsel are knowledgeable about the FLSA's requirements and how those issues are litigated. They brought that skill and experience to bear and prepared this case for conditional certification and settlement. Plaintiffs' counsel developed a dynamic spreadsheet that took into account multiple factors specific to each of the 103 plaintiffs, including each plaintiff's overall period of employment (with individual adjustments to reflect the actual recovery period and tolling), the actual number of shifts each plaintiff worked, and her average hourly wage. This model allowed plaintiffs' counsel to assess potential damages and to allocate settlement monies fairly and reasonably among plaintiffs. The skill required to litigate this case supports approval of the requested fee.

### 4. Preclusion of Other Employment

Plaintiffs' counsel represents that this lawsuit precluded counsel from taking on other work. As stated, counsel spent about 318 attorney hours and 180 paralegal hours on this matter.

They litigated the case for more than two years without any guarantee of recovery. The court finds that the time spent litigating the case demonstrates that the lawsuit precluded plaintiffs' counsel from working on other matters. This factor favors approval of the fee award.

### 5. Customary Fee

"While the Tenth Circuit applies a hybrid approach in determining the reasonableness of fees in common fund cases, the customary fee award is typically a percentage of the fund." *Barbosa*, 2015 WL 4920292, at *11 (first citing *Rosenbaum*, 64 F.3d at 1445; then citing *Gottlieb*, 43 F.3d at 482). Our court "typically applie[s] the percentage of the fund method when awarding fees in common fund, FLSA collective actions." *Id.* (citing *Bruner*, 2009 WL 2058762, at *7). "Fee awards in these cases have ranged from four per cent to 58 per cent of the common fund and resulted in total fee awards ranging from a few thousand dollars to over five million dollars." *Id.* (citing *Bruner*, 2009 WL 2058762, at *7).

Plaintiffs' counsel requests a fee award amounting to 40 percent of the Settlement Fund. Plaintiffs' counsel's combined requested fee award and cost award is 41.5 percent of the Settlement Fund. This percentage is consistent with the contingency fee agreement between plaintiffs' counsel and the representative plaintiff. And, it is within the customary fee range which counsel claims to charge in similar matters. The court finds this factor weighs in favor of approval.

### 6. Whether the Fee is Fixed or Contingent

When considering the sixth *Johnson* factor, courts ask whether plaintiff agreed to a fixed or contingent fee because the percentage of the recovery agreed helps illuminate the attorneys' fee expectations when counsel accepted the case, even though "[s]uch arrangements should not

determine the court's decision." *Johnson*, 488 F.2d at 718 (quoting *Clark v. Am. Marine, Corp.*, 320 F. Supp. 709, 711 (E.D. La. 1970)).

Here, the representative plaintiff (and the opt-in plaintiffs through their consent forms) agreed to a fee arrangement where attorneys' fees would be calculated as the greater of (i) a 40 percent contingency fee if the case resolved before any appeal, or (ii) an hourly based formula based on plaintiffs' counsel's billed hours. Plaintiffs' counsel seeks 40 percent of the Settlement Fund (even though it is less than the hours billed amount) to promote settlement. The court finds this factor favors approval.

### 7. Any Time Limitations Imposed

Plaintiffs' counsel neglects to address this factor. The court thus assumes this factor disfavors approval.

### 8. Amount Involved and the Results Obtained

Plaintiffs' counsel secured a favorable result for their clients. The average payment to each collective action member is about $1,500. Most plaintiffs had worked less than full-time and for less than minimum wage, so this is a good outcome for them. And, defendants contested their liability, so the ultimate outcome of this litigation (if it had not settled) remained in doubt. This settlement avoids the uncertainty and rigors of trial and produces a favorable, certain result for plaintiffs. This factor favors approval of the fee award.

### 9. Experience, Reputation, and Ability of the Attorneys

The court already has discussed the experience, reputation, and ability of the attorneys above. As noted, plaintiffs' counsel has experience litigating employment cases, particularly FLSA cases. Mr. Byers and Mr. Rhodes, who are both experienced partners at a well-known Kansas law firm, led this litigation. This factor favors of approval.

### 10. Undesirability of the Case

Plaintiffs' counsel notes that contingency fee cases are inherently risky, and therefore undesirable. But counsel also acknowledges that undesirability of the case is a neutral factor in this analysis. The court agrees that the undesirability of the case is a neutral factor here because the court has already taken into account the contingent fee arrangement, above.

### 11. Nature and Length of the Professional Relationship with the Client

Plaintiffs' counsel doesn't address this factor. But, as our court has explained, "[t]he meaning of this factor . . . and its effect on the calculation of a reasonable fee has always been unclear, and courts applying the *Johnson* factors typically state that this particular standard is irrelevant or immaterial." *Barbosa*, 2015 WL 4920292, at *12 (citing *Bruner*, 2009 WL 2058762, at *9 (further citation omitted)).

### 12. Awards in Similar Cases

Plaintiffs' counsel requests $120,000 (40 percent of the Settlement Fund), plus $4,449.95 in costs and $300 in anticipated expenses for administering the settlement. A contingent fee of 40 percent is near the high end of fee awards that our court has approved. Plaintiffs' counsel cites only one District of Kansas case where the court approved a 40 percent contingency fee from a common fund. *See Payson v. Capital One Home Loans, LLC*, No. 07-CV-2282-DWB, 2009 LEXIS 25418 (D. Kan. Mar. 26, 2009) (approving a 40 percent contingency fee, with the "express admonition that this award should not be used in future cases as evidence that a 40% fee is *per se* reasonable."). Plaintiffs' counsel argues that the circumstances, as in *Payson*, justify a 40 percent contingency fee. Specifically, the contingency fee ($120,000) is only 67 percent of the lodestar value ($178,865.00).

The court agrees that a 40 percent fee is fair and reasonable in this context. Besides the discount from the lodestar, the representative plaintiff and opt-in plaintiffs agreed to the higher amount of an hourly rate or a 40 percent contingency fee. Based on its analysis of the lodestar and *Johnson* factors, the court concludes that the attorneys' fees requested are fair and reasonable. The court thus grants plaintiffs' request for approval of the proposed attorneys' fees award.

### D. Costs and Expenses

Plaintiffs' counsel also requests $4,449.95 in costs and $300 to cover anticipated expenses for administering the settlement. Costs include court filing fees, mediation fees, and travel expenses. Counsel asserts it typically bills these costs to an hourly-paying client, and that the costs represent counsel's actual expenses without mark-up. Doc. 74-1. The court finds these costs are fair and reasonable.

Finally, plaintiffs' counsel requests $300 for settlement administration expenses. The Settlement Agreement contemplates payments in four installments, so counsel requests compensation for out-of-pocket expenses for postage and materials. The court finds this cost is fair and reasonable. The court thus grants plaintiffs' counsel's request for costs ($4,449.95) and expenses ($300).

## IV. Conclusion

The court grants, in part, plaintiffs' Unopposed Motion to Grant Certification and Approve Collective Action Settlement. Doc. 73. The court reduces plaintiffs' counsel's request for a $15,000 service award for the representative plaintiff to a $5,000 award. The court grants plaintiffs' Unopposed Motion for Approval of Attorneys' Fees in Conjunction with Settlement. Doc. 74.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' Unopposed Motion to Grant Final Certification and Approve Collective Action Settlement (Doc. 73) is granted, in part, with a reduction in the service award for the representative plaintiff to $5,000.

**IT IS FURTHER ORDERED THAT** plaintiffs' Unopposed Motion for Approval of Award of Attorneys' Fees in Conjunction with Settlement (Doc. 74) is granted.

**IT IS SO ORDERED.**

**Dated this 11th day of October, 2019, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
